## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LESTER WINTER, JR.,** | ) | |
| **No. M28567,** | ) | |
| | ) | |
| **Petitioner/Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.  14-cv-00762-DRH** |
| | ) | |
| **WARDEN DUNCAN,** | ) | |
| | ) | |
| **Respondent/Defendant.** | ) | |

### MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Lester Winter, Jr., is an inmate at Lawrence Correctional Center.   His "Amended Complaint" (Doc. 16) is before the Court for preliminary review.

The public records of the Illinois Department of Corrections indicate that Winter was convicted of aggravated criminal sexual abuse of a minor less than 13 years of age.  His projected parole date was July 9, 2014, but because he did not have a satisfactory residence, he was not released from prison.

Winter's initial pleading (Doc. 1) bore no formal caption.  The pleading referenced the First Amendment, the Americans with Disabilities Act, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment—all suggesting civil rights violations by officials in connection with the conditions of confinement in prison, and the failure to find Winter a place to live.  However, Winter sought placement in a halfway house.  Unable to discern the nature of the case, the complaint was dismissed without prejudice (Doc. 7).

The dismissal order explained the differences between two possible avenues for relief: (1) a civil rights action; or (2) a petition for writ of habeas corpus. The Court gave Winter an opportunity to amend his pleading, and indicated that the appropriate filing fee would be assessed once it was clear whether this was a civil rights or habeas action. The Amended Complaint (Doc. 16) is somewhat ambiguous, but for the reasons that follow, the Court concludes that it must be analyzed as a civil rights case.

### Notices and Motions

In advance of delving into the Amended Complaint, a variety of notices and motions filed by Winter will be addressed—some of which are tangentially related to the assessment of the Amended Complaint.

### Counsel

Winter has filed two motions for counsel (Docs. 13, 15). He states that he has an unspecified learning disability, although he completed high school. He explains that he does not know much about the law, his access to the law library is limited, and he does not feel that he will be able to adequately represent himself. With only approximately $150 in his prison trust fund account, he obviously cannot afford to retain counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent

litigant.  *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own.  *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)).  If so, the Court must examine "whether the difficulty of the case—factually and legally— exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655).  "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'  *Pruitt*, 503 F.3d at 655.  The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Although Winter cannot afford to retain counsel, he has not made any effort to get an attorney to take his case on a contingency basis, or to have a legal services group take up his cause.  Denial of his motions on that basis alone is justified.  The Court is definitely concerned about Winter's intellect and ability to frame his cause of action, but his pleadings to date and choices made do not convince the Court that his issues are factually or legally more than he can handle, particularly since *pro se* pleadings are construed liberally and *pro se*

litigants are not held to the same standards as trained legal counsel.[1]   More specifically, Winter appears to be challenging a very narrow aspect of what has been called the "turnaround policy."  *Compare Murdock v. Walker*, 2014 WL 916992, *7 (N.D. Ill. 2014).  Therefore, Winter's motions for counsel (Docs. 13, 15) will be denied without prejudice.  The Court will remain open to appointing counsel.

### **Miscellaneous**

Two "motions for notification" (Docs. 11, 14) were filed in advance of the Amended Complaint.  The first document (Doc. 11) is not signed, so it will be stricken.  *See* FED.R.CIV.P. 11(a) (unsigned motions must be stricken).  The second document (Doc. 14) is construed as a motion for leave to file the amended pleading out of time, due a delay in the prison business office transmitting the pleading to the Court before the prescribed deadline.  A review of the Amended Complaint reveals that it was signed before the deadline for amendment and received by the Court six days after the deadline (with an intervening three-day holiday weekend when mail would not have been delivered to the Court).  For good cause shown, and because it appears that the Amended Complaint was turned over for transmittal to the Court before the deadline, Plaintiff's motion (Doc. 14) will be granted.  Accordingly, the Amended Complaint (Doc. 16) is considered to have been timely filed.

---

[1] Choosing between pursuing a civil rights action and a habeas corpus petition is often a close call (as will be discussed below).  The Court cannot say that Winter has chosen the wrong avenue for relief.

Another "motion for notification" (Doc. 19) was filed after the Amended Complaint.   Winter cites the Civil Rights Act of 1964 (Pub.L. 88-352, 78 Stat. 241(1964)), pertaining to discrimination based on race, color, religion, gender or national origin.   The Court surmises that he meant to cite 42 U.S.C. § 1983 (Pub.L. 96-170, 93 Stat. 1284 (1979)).   In any event, he asserts that his constitutional rights are being violated relative to (1) his being held past his out-date, and (2) the conditions of his confinement.   Plaintiff does not request anything specific in this "motion to notify," so the motion (Doc. 19) will be denied as moot.

A "Petition against Field Service, Resource Placement" (Doc. 20) confirms that Winter remains in prison where, due to discrimination, he is not being given medical treatment for his learning disorder.   Because it is unsigned, the "petition" (Doc. 20) must be stricken.   *See* FED.R.CIV.P. 11(A) (unsigned motions must be stricken).

A month after the Amended Complaint was filed, Winter filed an "Amended Motion for False Imprisonment" (Doc. 21).   Assertions are made that officials have been negligent and have violated Winter's constitutional rights by holding him in prison without his consent.   Insofar as Winter may have intended to further amend the Amended Complaint, amendment by interlineation is not permitted (*see* Local Rule 15.1).   An amended complaint must contain all claims a plaintiff wants to pursue against all defendants.   Winter's motion (Doc. 21) will,

therefore, be denied, leaving the Amended Complaint (Doc. 21) as the controlling pleading.

## The Amended Complaint

The Amended Complaint (Doc. 16) specifies that it is brought pursuant to 42 U.S.C. § 1983 to seek redress for constitutional violations related to Winter's continued incarceration at Lawrence Correctional Center ("Lawrence") long past his September 2014 parole date.  According to the Amended Complaint, halfway housing is supposed to be provided to inmates who have no other approved placed to reside upon their release from prison on parole.  *See* 730 ILCS 5/3-3-2 and 5/3-14-2 (splitting duties related to the parole decision itself, and supervision of a parolee, between the Prisoner Review Board and Department of Corrections). No such housing arrangement has been made for Winter.   The five named defendants[2]—all Illinois Department of Corrections (IDOC) officials—are described as being individuals acting under color of law, which is prescribed in Section 1983 as a requirement for liability.

Defendant Salvador Godinez is the director of the IDOC, and defendant Donald Gaetz is the deputy director overseeing the institutions within the southern region, including Lawrence.

---

[2] Lawrence Correctional Center and the Illinois Department of Corrections ("IDOC"), which were listed as parties  in the original pleading (Doc. 1), are not included as parties in the Amended Complaint (Doc. 16), and are therefore deemed voluntarily dismissed. *See* Fed.R.Civ.P.  10(a), 15(a), 41(a).

Defendant Stephen Duncan is the warden of Lawrence.   Duncan is described as being legally responsible for the operation of the prison and the welfare of inmates housed there.

According to the Amended Complaint, the Clinical Services Department at the prison, headed by defendant Randy Stevenson, is supposed to keep an up-to-date list of available housing sites.  Clinical Services also "handles the leg work" to ensure a halfway house site is approved prior to an inmate's parole date.  Clinical Services does not provide the list of possible cites to the inmate, so an inmate cannot take action to improve the chances that a site will be secured, except that an inmate may stay with a family member, if approved by the Illinois Department of Corrections ("IDOC") Prisoner Review Board.

Living with a relative is the first option explored.  Six months prior to an inmate's parole date, the inmate's counselor is supposed to submit the proposed family site so that a Parole agent can inspect and approve the site.  If disapproved, the inmate then pursues the halfway house option.   Defendant Williams is Winter's counselor.

Winter asserts that his mother's residence was inspected and disapproved due to a "misunderstanding," but he otherwise qualifies for placement in a halfway house.   Winter subsequently submitted a request to Clinical Services Director Randy Stevenson and Counselor Williams for placement in a halfway house, all to no avail.

The Prisoner Review Board stated that Winter's situation would be looked into further, but he remains incarcerated.  Administrative grievances have gone unanswered.  An "emergency grievance" was deemed by Warden Duncan not to be an emergency, and Winter was instructed to submit the grievance through his counselor.  A letter to Deputy Director Gaetz went unanswered.  Winter states that he can send his rejected emergency grievance to the Administrative Review Board and, ultimately, to IDOC Director Godinez.  Whether he has done so is unclear.

Winter asserts that, *if* the defendants would only do their jobs or allow him to line up a halfway house, he could be released from prison, as he should have been on his scheduled September 7, 2014, parole date.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the following counts, which generally mirror the claims enumerated in the Amended Complaint.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

**Count 1:** **By failing to release Winter on his scheduled parole date, Defendants have subjected him to cruel and unusual punishment in violation of the Eighth Amendment;**

**Count 2:** **By failing to assist in lining up a housing site for Winter, Defendants have denied him procedural due process, in violation of the Due Process Clause of the Fourteenth Amendment;**

**Count 3:** Defendants have acted negligently by failing to assist in lining up a housing site for Winter, in violation of Illinois common law;

**Count 4:** By not lining up a housing site for Winter, and by not releasing him on his scheduled parole date, Defendants have subjected him to false imprisonment, in violation of Illinois common law; and

**Count 5:** Defendants have intentionally inflicted emotional harm upon Winter by failing to assist in lining up a housing site, and by not releasing him on his scheduled parole date, in violation of Illinois common law.

Winter seeks declaratory judgment, compensatory and punitive damages, and a permanent injunction ordering the defendants to provide halfway house placement services, including allowing a list of halfway sites to be given to Winter (*see* Doc. 16, p. 8).

## Discussion

### Nature of the Suit

As already noted, the original complaint (Doc. 1) was ambiguous; the Court could not discern whether Winter wanted to pursue a civil rights action or a petition for writ of habeas corpus.   The Amended Complaint (Doc. 16) is specifically brought pursuant to 42 U.S.C. § 1983, which pertains to civil rights claims.   The remedies sought are of the sort that generally fall within the ambit of Section 1983, and do not include a request for release on parole.   Rather, Winter requests, in pertinent part, that steps be taken that will afford him due process—*hopefully* resulting in release on parole.   Still, the Amendment Complaint and a few of Winter's "notices," suggest that winter is seeking release.

The Court, cannot *sua sponte* alter the nature of the suit and must take the pleading as presented.  *See Glaus v. Anderson*, 408 F.3d 382, 389-90 (7th Cir. 2005); *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999).  Moreover, in keeping with *Wilkinson v. Dotson*, 544 U.S. 74 (2005), Section 1983 appears to be the appropriate avenue for the type of relief sought: declaratory and injunctive relief in the form of proper procedural due process that will, *hopefully*, result in parole.  *See*, e.g., *Murdock*, 2014 WL 916992, *5.  Thus, Winter's constitutional claims are cognizable under Section 1983.

Now that it is clear that Winter desires to proceed under Section 1983, as opposed to pursuing a petition for writ of habeas corpus, the appropriate filing fee can be assessed, as the Court forewarned in its prior order (Doc. 7).  The $5 filing fee for a habeas corpus action was previously assessed as a matter of course (Doc. 4).  The amount owed for filing a civil rights action is $400—$350 if the plaintiff is granted pauper status, which Winter has been granted.  The Court's July 14, 2014, order regarding the collection of the $5 fee (Doc. 4) will be vacated and a new order will be entered directing that the $350 filing fee will be collected in accordance with 28 U.S.C. § 1915(b).

**<u>Preliminary Review</u>**

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) Grounds for Dismissal.– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557.   At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Although Counts 1 and 2 may be cognizable under Section 1983, the Court must still review each count to ensure a colorable claim has been stated as to each defendant.

## Count 1

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.  U.S.CONST.,

amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). The Eighth Amendment encompasses a claim that prison officials, acting with deliberate indifference, hold an inmate beyond the term of his incarceration without penological justification. *See Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing *Campbell v. Peters,* 256 F.3d 695, 700 (7th Cir. 2001). At this early point, the Court assumes that Winter was held beyond his release date, but that does not end the inquiry.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Because personal involvement is required for liability to attach, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused the constitutional deprivations can suffice to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002). Also, "[s]upervisory liability will be found … if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for

it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

There are no allegations in the narrative portion of the Amended Complaint regarding IDOC Director Salvador Godinez or Deputy Director Donald Gaetz. Godinez and Gaetz are merely described as being "legally responsible for the overall operation" of IDOC institutions, including Lawrence Correctional Center (*see* Doc. 16, p. 2). In essence, Winter is attempting to impose liability upon Godinez and Gaetz under the *respondeat superior* doctrine, which, as already noted, is not applicable to Section 1983 claims. Therefore, Godinez and Gaetz will be dismissed without prejudice from Counts 1 *and* 2—the Section 1983 claims.[3] Based on the allegations in the Amended Complaint regarding the Lawrence defendants' respective roles in the process of securing a housing site (and some apparent contradictions with the process prescribed under 730 ILCS 5/3-14-2), each defendant's personal involvement appears plausible.

In addition to individual involvement in the alleged constitutional deprivation, a defendant must have acted or failed to act out of deliberate indifference. Proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior; rather, a defendant must have acted with the equivalent of criminal recklessness. *Farmer v. Brennan*, 511 U.S. 825,

---

[3] Illinois, as a general matter, recognizes the *respondeat superior* doctrine. *See Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009); *see also Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004). Godinez and Gaetz will, therefore, not be dismissed from Counts 3-5, the state law claims. However, no independent *respondeat superior* claim is asserted by Winter or recognized by the Court.

835-37 (1994); *Armato*, 766 F.3d at 721.   Again, because the Lawrence defendants' respective roles in the process of securing a housing site is unclear, the possibility that each of those individuals acted with deliberate indifference cannot be decisively determined at this time.   Consequently, Count 1, the Eighth Amendment claim, shall proceed against defendants Warden Stephen Duncan, Clinical Services Director Randy Stevenson and Counselor Williams.

**Count 2**

Count 2 pertains to whether the defendants denied Winter due process in violation of the Fourteenth Amendment when they failed to assist in lining up a housing site.   The Fourteenth Amendment's Due Process Clause prohibits the deprivation of life, liberty, and property without due process of law.   U.S. CONST., amend.  XVI; *Matamoros v. Grams*, 706 F.3d 783, 789 (7th Cir. 2013).   Although only "notice pleading" is required (*see* FED.R.CIV.P. 8(a)(2)), to succeed on a Due Process Clause claim, a plaintiff must prove: (1) a cognizable liberty interest; (2) a deprivation of that liberty interest; and (3) an absence of due process.   *See  Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir.2013) (citing *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir.2010); *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir.1989)).   In addition, as noted relative to Count 1, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation."  *Pepper*, 430 F.3d at 810.

Regarding whether Winter has a protectable liberty interest at stake, "[t]here is no constitutional or inherent right of a convicted person to be

conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). Nevertheless, a state may create an expectation of parole that qualifies as a liberty interest. *Board of Pardons v. Allen*, 482 U.S. 369, 376 (1987); *Heidelberg v. Illinois Prisoner Review Board*, 163 F.3d 1025, 1026 (7th Cir. 1998). The Supreme Court of Illinois does not view the Illinois parole scheme as creating a liberty interest. *See generally, Hill v. Walker*, 480, 948 N.E.2d 601, 605-06 (Ill. 2011). Nevertheless, the Court of Appeals for the Seventh Circuit has recognized that *if* an inmate is on parole, he has a liberty interest in retaining that status. *See Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 781 (7th Cir.2008) (noting that it is "established that an inmate on parole has a liberty interest in retaining that status"); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege.' By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment."). According to the Amended Complaint, Winter has been approved for release on parole and had parole revoked at the prison gate because he had no approved housing site—he does not take issue with the parole decision itself, or the revocation decision. Thus, a protected liberty interest is at issue.

Exactly what process is due Winter is not entirely clear, but according to the Amended Complaint, the defendant prison officials were supposed to assist Winter in lining up a housing site when living with his family was deemed unsuitable (for whatever reasons).  In any event, it is alleged that officials have not taken the necessary steps to secure him a site, and they will not provide him with a list of approved sites so that he can take steps to get a place lined up.  Thus, a due process claim has been stated.

As with Count 1, questions remain regarding each defendant's personal involvement in the alleged deprivation.  For these reasons, Count 2 shall proceed against defendants Warden Stephen Duncan, Clinical Services Director Randy Stevenson and Counselor Williams.

**<u>Counts 3-5</u>**

Count 3 alleges negligence; Count 4 alleges false imprisonment; and Count 5 pertains to intentional infliction of emotional harm.  Counts 3, 4 and 5  are state law claims stemming from the same underlying factual allegations underpinning Counts 1 and 2 regarding the five defendant prison officials failing to assist in lining up a housing site and failing to release Winter on his scheduled parole date.[4]  Counts 1 and 2 are properly brought under Section 1983—claims over which this federal court has original jurisdiction (*see* 28 U.S.C. § 1331).  The

---

[4] The original complaint (Doc. 1) contained a claim that Warden Duncan told Winter's ailing mother that she would never see her only son again.  That claim is <u>not</u> reasserted in the Amended Complaint (Doc. 16), although documents attached to the Amendment Compliant pertain to Winter's mother (*see* Doc. 16, pp. 10-12).  Thus <u>no</u> claims are recognized based upon allegations regarding Winter's mother.

Court may exert supplemental jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.

Counts 3-5 appear to be adequately pleaded and will not be dismissed at this early juncture.  Counts 3-5 shall proceed in this same case as supplemental claims against all five defendants:  IDOC Director Salvador Godinez, Deputy Director Donald Gaetz, Warden Stephen Duncan, Clinical Services Director Randy Stevenson and Counselor Williams.

## **Disposition**

**IT IS HEREBY ORDERED** that the Clerk of Court is **DIRECTED** to alter the record to reflect that this action is brought pursuant to 42 U.S.C. § 1983, and is not as a petition for writ of habeas corpus.  Accordingly, the party designations shall be changed to "plaintiff" and "defendant."  Also, by random draw, this case shall be **REASSIGNED** to the docket of a district judge who is designated to preside over such cases.

**IT IS FURTHER ORDERED** that the Court's July 14, 2014, order regarding Winter's pauper status and the filing fee (Doc. 4) is **VACATED**.  A new order regarding the collection of the applicable $350 filing fee shall issue separately.

**IT IS FURTHER ORDERED** that Winter's motions for counsel (Docs. 13, 15) are **DENIED without prejudice**; his motion for notification (Doc. 11) is

**STRICKEN**; his motion for notification (Doc. 14) is **GRANTED**, in that the Amended Complaint (Doc. 16) is deemed timely filed; his motion to notify (Doc. 19) is **DENIED AS MOOT**; his Petition Against Field Service, Resource Placement (Doc. 20) is **STRICKEN**; and his Amended Motion for False Imprisonment (Doc. 21) is **DENIED**.

IT IS FURTHER ORDERED that **LAWRENCE CORRECTIONAL CENTER** and **IDOC**, which were not named as defendants to the Amended Complaint, are **VOLUNTARILY DISMISSED without prejudice**.

IT IS FURTHER ORDERED that defendants **SALVADOR GODINEZ** and **DONALD GAETZ** are **DISMISSED without prejudice from COUNTS 1 and 2**.

IT IS FURTHER ORDERED that **COUNTS 1 and 2** shall otherwise **PROCEED** against defendants **STEPHEN DUNCAN**, **RANDY STEVENSON** and **WILLIAMS**.

IT IS FURTHER ORDERED that **COUNTS 3-5** shall **PROCEED** against defendants **SALVADOR GODINEZ**, **DONALD GAETZ**, **STEPHEN DUNCAN**, **RANDY STEVENSON** and **WILLIAMS**.

The Clerk of Court shall prepare for defendants **SALVADOR GODINEZ**, **DONALD GAETZ**, **STEPHEN DUNCAN**, **RANDY STEVENSON** and **WILLIAMS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each defendant's place of employment as identified by plaintiff.

If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon the defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

The defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against plaintiff, and the judgment includes the payment of costs under Section 1915, plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for

want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**Signed this 4th day of February, 2015.**

David R.
Herndon
2015.02.04
10:35:49 -06'00'

**United States District Judge**